IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VIVIAN COLON SANTIAGO, ET AL.,

     Plaintiffs,

        v.                      Civ. No. 01-2722 (PG)

HECTOR ROSARIO, ET AL.,

     Defendants.

### OPINION AND ORDER

Plaintiffs are current and former employees of the Puerto Rico Electric Power Authority ("PREPA") who filed suit alleging violations of the First, Fifth, and Fourteenth Amendments to the U.S Constitution. Before the Court is co-defendants PREPA and Hector Rosario's motion for partial summary judgment as to several plaintiffs' individual claims. (Docket No. 96.) For the following reasons the Court **GRANTS IN PART DENIES IN PART** defendants' motion.

### FACTUAL BACKGROUND[1]

Plaintiffs[2] are all members of the New Progressive Party ("NPP"), which was the political party in power in Puerto Rico before the 2000 general election. At the time of the election, plaintiffs were employed in trust positions. In the November 7, 2000, election, the Popular Democratic Party ("PDP")defeated the NPP.

In December 2000, PREPA's then Executive Director Miguel Cordero ("Cordero") reinstated ninety-two employees, including plaintiffs, from trust positions to career positions. In many cases, Cordero awarded the reinstated employees the same salaries they had earned in their trust positions; in some cases merely token salary adjustments took place. Upon reinstatement, these

---

[1] The Court culls the relevant facts from the Court of Appeals Opinion, Colon-Santiago v. Rosario, 438 F.3d 101 (1st Cir. 2006).

[2] The names plaintffs are Vivian Colon-Santiago, Madeline Ortiz-Negron, Sandra I. Nieves-De-Jesus, Yelitza Garcia-Colon, Magaly Alverio-Fernandez, Sandra Ivelisse Rivera-Poll, Carmen L. Perez-Gotay, Carmen C. Maisonet-Diaz, Rosa E. Jimenez, Astrid Rodriguez-Cruz, Magda Brito-Rivera, Samuel Nales-Perez, Ana E. Diaz-Sanchez Sonia I. Rivera-Pagan, Gladys A. Miranda-Collazo, Felix Echeandia-Costa, Jose A. Guilloty-Arvelo, Heydsha M. Eckert-Duchesne, Blanca Hernandez-Misla, Myriam Noemi Hernandez, Faustino Mercado-Vega, Juan A. Perez-Lopez, Raquel Ramos-Medina, Ana M. Rigual, Camilo Garcia-Medina, Marianela Rivera-Medina, Maria de Lourdes Ramos-Rivera, and Angel R. Padilla-Caceres. (Docket No. 13.)

employees were earning more than others who held comparable positions[3].

In January 2001, PREPA's Governing Board appointed defendant Hector R. Rosario Hernandez ("Rosario") as Executive Director. Thereafter, PREPA's Human Resources Director reviewed all personnel transactions carried out during the electoral ban period. PREPA also requested and obtained legal opinions from a local law firm regarding the reinstatements that occurred during the electoral ban period and the assignment of salaries to employees reinstated to career positions. The law firm issued two opinions, one in March 2001 and the other in May 2001. In these opinions, the firm opined that reinstatements which occurred during the electoral ban were null and void, and that the reinstatement salaries, to the extent that they were on par with the employees' trust position salaries, were also null and void. Id.

At the conclusion of the review process, PREPA set out to address the reinstatements. Defendant Ana T. Blanes ("Blanes"), PREPA's Director of Human Resources, along with Aníbal Hernández ("Hernández"), a PREPA salary specialist, devised the following threshold formula: the salary assigned by Cordero to each reinstated employee was compared to the salary the employee would have earned if he had remained in his last career position, accounting for natural salary increases. If the discretionary salary exceeded the non-discretionary salary by more than 10%, the employee's salary was adjusted to the non-discretionary salary. If the difference between the two salaries was less than 10%, the employee's salary remained the same.

On June 17, 2001, using this formula, PREPA reduced the salaries of thirty-three reinstated employees, including twenty-six of the plaintiffs in this case. The salaries of the remaining fifty-nine employees were not adjusted. The affected employees were advised of their right to appeal the decision by filing an administrative complaint with PREPA's Labor Affairs Office. Plaintiffs instead filed the above-captioned complaint on December 21, 2001 (Docket No. 1) which was later amended on February 26, 2002. (Docket No. 13.) The named defendants are: PREPA, Rosario, Blanes, Luis Jimenez-Pagan,

---

[3] These transactions occurred during the electoral ban period, governed by a statutory provision prohibiting certain public service personnel transactions two months prior to and two months after an election. See Article 10, PREPA Personnel Regulations for Non-Union Employees, P.R. Stat. Ann 3 § 1337.

Civ. No. 01-2722 (PG)                                                    Page 3

Victor Figueroa, Lourdes A. Guijarro, Kennedy Vega, Iris Ortiz, Ramon Rodriguez-Melendez, and Wilfredo Pantojas[4]. The individual defendants are sued both in their official and individual capacities.

**PROCEDURAL HISTORY**

On August 14, 2003, defendants in their official capacity filed a motion for partial summary judgment arguing that the First Amendment salary reduction and due process claims should be dismissed. (Docket No. 59). That same day, defendants in their individual capacities filed a motion for summary judgment arguing that the complaint should be dismissed in its entirety. (Docket No. 60.) The following day, co-defendants PREPA and Hector Rosario in their official capacity filed a "Motion for Extension of Time to File Dispositive Motion on Some of Plaintiffs' Individual Claims," to wit, the political harassment and termination claims. (Docket No. 60) The Court granted the motion and set the filing deadline for September 15, 2003. (Docket No. 65.) On September 15, instead of filing their motion, defendants sought another extension of thirty days to file the motion. (Docket No. 74). The Court never ruled on that motion, nevertheless, on October 17, 2003, one day after the deadline, defendants filed their announced motion. (Docket No. 96.) Plaintiffs moved to dismiss this third motion for summary judgment arguing it was filed past the deadline. As the Court of Appeals indicates in its Opinion, the Court never ruled on the motion to dismiss. Because the Court dismissed the Complaint in its entirety when it ruled on the first two motions for summary judgment (Docket Nos. 59 and 62) it did not address the arguments raised in the third motion nor did it rule on plaintiffs' request to dismiss it.

After the Court issued its Opinion and Order regarding the first two motions for summary judgment, plaintiffs filed several motions for reconsideration and/or to amend. (Docket Nos. 118, 119, 122 & 126.) The Court denied the requests for reconsideration and entered judgment dismissing the case with prejudice. (Docket Nos. 127 & 128.) Following the entry of judgment,

---

[4] Raul E. Rosado-Toro, PREPA's Personnel Administrator was originally named as a defendant but plaintiffs later voluntarily dismissed their claims as to him. (See Docket Nos. 84, 93, & 94.) Likewise, Ana Vela, PREPA's Regional Administrator of Commercial Operations was originally named as a defendant but later eliminated in the Amended Complaint. (See Docket Nos. 1 & 13.)

plaintiffs again moved for reconsideration (Docket Nos. 129 & 131, 134). Their request was ultimately denied. (Docket No. 145.) Plaintiffs appealed. (Docket No. 146.) The Court of Appeals affirmed in part, vacated in part, and remanded the case for consideration of several claims. See Colon-Santiago v. Rosario, 438 F.3d 101 (1st Cir. 2006).

On Appeal, the Court addressed defendants' arguments raised in their first two motions for summary judgment (Docket No. 59 and 62). The Court ruled that defendants did not violate plaintiffs' due process rights when they reduced their salaries. Id., at 111. Furthermore, the Court held that plaintiffs' reinstatements with salaries equivalent to the salaries they earned at their trust position constituted a *de facto* promotion. Id., at 109. Since these promotions occurred during the electoral ban, the Court held that they were in violation of the electoral ban. Id. Finally, the Court held that the reinstatements to career positions while maintaining the same salary from previous trust positions is a violation of Puerto Rico law and the merit principle. Id., at 111. Finally, the Court found that the District Court had failed to discuss the arguments raised in the third motion for summary judgment regarding the individual claims of nine plaintiffs. Id. Accordingly, it remanded the case for consideration of these claims. Id., at 112. On remand, the Court granted plaintiffs time to file their opposition to defendants' motion. (Docket Nos. 159, 160, 161, 162, 163 & 164.)

## **DISCUSSION**

### I. **Rule 56 standard**

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581

Civ. No. 01-2722 (PG)                                                    Page 5

(1st Cir. 1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc.. 477 U.S. 242, 247-48 (1986). At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).

     At the summary judgment juncture, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see Stoutt v. Banco Popular de Puerto Rico, 158 F.Supp.2d 167, 171-172 (D.P.R. 2001)."It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of even handed justice." Id. (internal quotations omitted). "Under such circumstances, jury judgments about credibility are typically thought to be of special importance." Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir.1983).

     **II. Political Harassment**

     To prevail in a claim of political harassment, "the record must contain evidence which would allow the factfinder to conclude, by clear and convincing evidence, that the nonmoving employee's new position is "unreasonably inferior to the norm." Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 39 (1st Cir. 1993)(quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1220 (1st Cir. 1989). Furthermore, plaintiffs must show that the change or alleged "inferiority" was of a magnitude that would reasonably cause them to compromise their political beliefs and associations in favor of defendants' political party. Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 22 (1st Cir.

2006). Indeed, plaintiffs must show by a preponderance of the evidence that their political affiliation was a substantial factor in causing the environment to become inferior. Id. Defendants may avoid liability if they prove that they would have acted the same way regardless of plaintiffs' political affiliation. Id.

### III. **Analysis**

A. Plaintiff Raquel Ramos Padilla ("Ramos")

On April 13, 1992, Ramos began working at PREPA as a Typist Clerk III in a temporary appointment for a period of 60 days. (Defendants' Statement of Uncontested Material Facts (hereinafter"SUMF"), Personnel Action and Payroll Request, Docket No. 96, Ex. 3.) Keeping a temporary employee status, on July 25, 1994, Ramos was appointed Confidential Secretary I for a period of 175 days. (Id., Ex. 4.) Subsequently, effective July 31, 1994, Ramos' appointment as Confidential Secretary I was changed to a regular/conditional one. Her salary was then $22,230.00. (Id., Ex. 5.) This was plaintiff Ramos' last position in the career service before holding a position in the trust-confidence service. Effective August 14, 1994, Ramos was appointed to the trust/confidence service to the position of Confidential Secretary II. (Id., Ex. 6.) Thereafter she was appointment to the trust/confidence position of Special Assistant. On December 12, 2000, Cordero reinstated Ramos from the trust/confidence position of Special Assistant to Confidential Secretary I in the career service. (Id., Personnel Action identified as Ex. 1 & Letter from Cordero dated December 12, 2000 identified as Ex. 2.) On January 17, 2002, Rosario sent a letter to Ramos indicating that effective June 24, 2001, her salary as per her reinstatement of December 2000 had been adjusted. Rosario further informed her that in said personnel action, her employee status appeared as regular when it should have been regular/conditional. Defendants corrected her employee status accordingly. (Id., Rosario's January 17, 2002 letter identified as Ex. 2.)

Defendants move for summary judgment arguing that Ramos was reinstated during the electoral ban period, therefore, this personnel transaction was null and illegal. They further argue that pursuant PREPA's Personnel Regulations for Non-Union Career Employees (hereinafter "Personnel Regulations") Ramos should have been reinstated to a regular/conditional

position but she was not. Upon conclusion of the review process of the personnel actions taken during the electoral ban, Ramos's position was reclassified in compliance with Article 11.4.1[5] of PREPA's Personnel Regulations. (See SUMF, Docket No. 96, Ex. 1 & 2; Docket No. 164, Ex. A at pp. 1-4.) Defendants insist that Ramos' political affiliation was never considered when correcting her employee status. Indeed, they argue that Ramos has never personally told any of the defendants that she is a NPP activist. (Ramos' deposition, Id., Ex. 7 at pp. 18-21.) PREPA insists that Ramos' reclassification was only motivated by its interest in the effective implementation of its policies. Lastly, defendants claim that Ramos failed to claim that her duties were diminished because of her political affiliation.

Ramos avers that defendants changed the status of the Confidential Secretary I position from regular to conditional only as a result of a political vendetta against her. She alleges that as a result of the demotion she has endured further stress, anger, sadness, fear, shame, disappointment, depression and anxiety. (See Amended Complaint, Docket No. 13 at 8.) Furthermore, she claims that once she was reinstated to the career position in the wake of the 2000 elections she has been deprived of functions. (Docket No. 164, Ex. A at pp. 6-9.) Ramos states that she has never performed the functions of her position since her reinstatement following the elections.(Id. at 11-12; see Docket No. 163 at pp. 12-13.) With regards to her political affiliation, Ramos argues that she has always been identified with the NPP group within PREPA. (Docket No. 164, Ex. A at p. 18, line 13.) Furthermore, that she has been outspoken before people or groups affiliated to the PDP regarding political issues. (Id., at lines 19-24). She claims she has never hidden her political affiliation, wears T-shirts with NPP insignias during political activities, has NPP stickers in her car, has attended political campaign activities, and has participated in activities sponsored by PREPA's

---

[5] Article 11.4.1 states in pertinent part:

> If a career service employee with regular status has passed or passes to the service of trust and [is] later separated from the same, he will have the absolute right to be reinstated to a position on a part or to one equivalent to the one occupied in the career service at the time he was moved to the service of trust.

Civ. No. 01-2722 (PG)                                                    Page 8

NPP Group. (Id., at p. 19 lines 14.) Plaintiff further states that she identified herself as an NPP in front of co-defendant Blanes. (Id., at p.20 lines 3-9).

Having carefully reviewed the record, the Court denies summary judgment as to Ramos' harassment claim. She testified that her functions as a secretary were reduced. (Docket No. 164 at p. 8, lines 4-5.) She claims she did not have a typewriter or any equipment to do work. (Id. at lines 6-8.) She further testified that she would go everyday to her Office Supervisor, Ilia M. Vaquero a PDP affiliate, and ask her if she had any work for her for she had no work to do. Ramos claims the diminution in functions happened since her reinstatement because of her political affiliation.(Id., at lines 14-25 and p. 9; see also Id., at p. 9, lines 5-14; p. 11, lines 17-26; & p. 12, lines 2-5.) Defendants have failed to proffer evidence to counter Ramos' testimony. Therefore, the Court denies summary judgment as to Ramos' claim.

B. Plaintiff Sandra I. Nieves De Jesus ("Nieves")

On February 14, 1993, Nieves was appointed to the trust/confidence position of Executive Secretary. (See SUMF, Docket No. 96, Ex. 8.) While in that position, on July 25, 1999, Nieves was appointed to another trust/confidence position: Special Assistant to the Finance Director. (Id., Ex. 9.) Her last position in the career service before becoming a trust/confidence employee was Confidential Secretary I at a salary of $29,394.50. (Id., Ex. 8.) On December 12, 2000, Cordero reinstated Nieves to a career position, Confidential Secretary I, in the Job Publication Section, within the Human Resources Directorate. (Id., Ex. 10.) Defendants claim that the Job Publication Section does not have a position of Confidential Secretary I. Therefore, because there was not a designated position in the Personnel Transactions Department and considering the need for a Confidential Secretary I in the Arbitration Department, Acting Human Resources Director, Ramon L. Rodriguez Melendez, Esq., notified plaintiff that she was to be reassigned to that department which is within the Directorate of Human Resources. (Id., Ex. 12, 13 & 14.) On September 21, 2001, Nieves' supervisor at the time, plaintiff Magaly Alverio Fernandez ("Alverio"), asked Mr. Rodriguez Melendez to reconsider his determination and allow Nieves to stay in the Personnel Transactions Department. (Id., Ex. 15.) On October 18, 2001, Blanes replied

to Alverio's request reiterating Mr. Rodriguez Melendez' decision and advising her that the situation in the Transactions Department had been resolved. (Id., Ex. 16.)

Defendants argue that when evaluating all personnel transactions conducted during the electoral ban, it was discovered that Nieves had been reinstated to a section where there was not a place for a Confidential Secretary I. Therefore, pursuant to Article 11.4.1 of the Personnel Regulations, Rosario corrected Nieves' reinstatement by reassigning her to a section within the same directorate where there was a position of Confidential Secretary I. Defendants insist that Nieves was not transferred but reassigned to the Arbitration section given the fact that she had been improperly reinstated. Defendants reiterate that Nieves reassignment was only motivated by PREPA's interest in the effective implementation of its policies and not because of her political affiliation. What is more, defendants argue that Nieves failed to claim that she suffered a diminution in her duties because of her political affiliation.

Nieves claims that she was transferred to the Arbitration Department in violation of the Personnel Regulations and only because of her political affiliation. Furthermore, she argues that contrary to defendants' assertion there was a position of Confidential Secretary I available under the Personnel Transactions Department, particularly in the Appointment and Changes Section.

Having reviewed the record, the Court finds that there are issues of fact that preclude granting summary judgment. Defendants argue that there were no Confidential Secretary I positions within the Job Publication Section of the Human Resources Directorate, therefore, they reassigned Nieves to the Arbitration Department, within the same directorate. The record shows, however, that in the Personnel Transactions Department under which the Job Positions Publications Sections is located, there is a Position for Confidential Secretary I under the Appointments and Changes Section. (See SUMF, Docket No. 96, Ex. 11.) The Arbitration Department is under the General Administrator of Labor Affairs Office while the Personnel Transactions Department is under the General Administrator Personnel Office. (Id., Ex. 13.) In other words, even tough the Arbitration Department to which Nieves was reassigned is under the same Directorate, it is not under the same Office or

section. (<u>Id.</u>, Ex. 11 & 13.) Defendants do not explain why they chose to move Nieves to the Arbitration Office instead of assigning her to the Supervisor of Appointment and Changes Section within the same Personnel Office where she was already working. What is more, in Alverio's September 21, 2001 letter questioning Nieves' reassignment, it appears that there was as much need of a Confidential Secretary I in the Personnel Transactions Department as there was in the Arbitration Department. Defendants fail to proffer evidence that convincingly shows why Nieves had to be reassigned to the Arbitration Department. Therefore, the Court denies summary judgment as to Nieves' claim.

   C. <u>Plaintiff Yelitza Garcia Colon ("Garcia")</u>

   Plaintiff Garcia started working at PREPA on June 4, 1995, as the Supervisor of the Evaluation and Special Tests Section. (SUMF, Docket No. 96, Ex. 17.) This was a temporary position in the career service. On July 30, 1995, she was appointed to the trust/confidence position of Administrator of the Occupational Safety Office. (<u>Id.</u>, Ex. 18.) While still occupying said position, on March 10, 1996, Garcia was adjudicated the position of Supervisor of the Evaluation and Special Tests Section in the career service. (<u>Id.</u>, Ex. 19.) Nevertheless, Garcia kept performing the duties of Administrator of the Occupational Safety Office. (<u>Id.</u>, Ex. 20.) A month later, specifically on April 14, 1996, Garcia was designated to occupy, by substitution, the position of Administrator of the Occupational Safety Office in the confidence/trust service. Thereafter, on June 16, 1999, Garcia's appointment as Supervisor of the Evaluation and Special Tests Section within the career service was converted to a permanent position even though she had only performed the duties of that position for only a month and a half and was not occupying the position at the time of the conversion. (<u>Id.</u>, Ex. 21.) Defendants allege that Garcia should have first passed a probationary period of three months in that position. (Defendants' Memorandum, Docket No. 96 at 6.) Furthermore, this happened while Garcia was still occupying the position of Administrator of the Occupational Safety Office in the confidence/trust service. Despite the irregularities in the adjudication of the position, Garcia's last career service position was Supervisor of Evaluation and Special Tests Section.

   On either December 12 or 13, 2000, Garcia was reinstated to the career service by Cordero to the position of Advisor on Health and Occupation Safety.

Civ. No. 01-2722 (PG)                                                    Page 11

(Id., Ex. 22 & Defendants' Memorandum, Docket No. 96 at 7.) The position of Supervisor of the Evaluation and Special Tests Section was reassigned to the trust/confidence service on January 12, 1997. (Id., Ex. 23.)

Defendants claim that when evaluating all the personnel transactions that took place during the electoral ban period, it was discovered that Garcia had been reinstated to a position graded much higher than the one at which she was supposed to be reinstated. The difference in grade entailed a much higher salary. Accordingly, Rosario, pursuant to Article 11.4.1 of the Personnel Regulations, corrected Garcia's reinstatement and reassigned her to a lower-graded position. Defendants insist that the only reason they reassigned plaintiff was to effectively implement PRPEA's policies and was not motivated by political reasons. Defendants further claim that Garcia never personally told any of the defendants that she is a NPP activist. Additionally, defendants argue that Garcia failed to claim that she suffered a diminution in her duties because of her political affiliation.

Garcia claims that defendants have not demonstrated that she was appointed to a higher career position because of circumstances contemplated in Article 14.4.4 of the Personnel Regulations which states that "if at the time to reinstate the trust employee to an equal or similar position in the area where it held its career position, a position of that nature is not available the Authority may, in agreement with the employee, assign to him another position guaranteeing it all rights mentioned in this section." (See Docket No. 163.)

Having carefully reviewed the record, the Court finds that the evidence shows that plaintiff's reassignment was not motivated by political reasons. However, Garcia has proffered evidence which is uncontradicted by defendants that shows that she suffered a diminution in her duties. (See Garcia's Deposition, Docket No. 164, Ex. A at pp. 21, lines 17-24; p. 22, lines 9-12; p. 23 lines 14-17 & 21-26; pp. 26-28.) Defendants fail to proffer evidence that explains why Garcia was left without duties at times and was persecuted. (See id.) Hence, the Court denies defendants' motion as to Garcia's harassment claim.

D. Plaintiff Magaly Alverio Fernandez ("Alverio")

Alverio worked at PREPA as an Occupation Analyst III. While still

occupying this position, on January 24, 1993, she was temporarily appointed to substitute the Deputy Chief of the Division of Personnel and Industrial Relations. (SUMF, Docket No. 96, Ex. 25.) On April 25, 1993, Alverio was appointed, again temporarily, to substitute the Supervisor of the Department of Evaluation of Human Resources. (Id., Ex. 26.) Alverio's substitution as Supervisor of the Department of Evaluation of Human Resources ended on May 8, 1993. (Id., Ex. 27.) This was a position within the career service. (Id., Ex. 28.) Defendants claim that this was Alverio's last position within the career service before entering the trust/confidence service. On May 9, 1993, after occupying said position for only three weeks, the position was adjudicated to Alverio. Defendants claim that this adjudication was made without complying with the publication and competition processes required to adjudicate a career position, therefore, she never acquired a property right over said position. (See Article 7 of PREPA's Personnel Regulations, Defendants' Memorandum, Docket No. 96, Ex. 3.) Thereafter, on July 31, 1994, Alverio was selected to occupy a position of  Administrator of Personnel Services within the trust/confidence service. (Id., Ex. 29.) On August 20, 2000, while still occupying a trust/confidence position, Cordero appointed Alverio to the position of Director of the Human Services Department. (Id., Ex. 30.) On December 14, 2000, Cordero reinstated Alverio to the position of Supervisor of the Department of Personnel Transactions in the career service. (Id., Ex. 31.) Defendants claim that Alverio kept approximately the same salary she earned as the Human Resources Director.

On January 17, 2002, Rosario sent Alverio a letter advising her that her promotion to the position of Supervisor of the Department of Evaluation of Human Resources had been carried out in violation of PREPA's Personnel Regulations. The violations included: the fact that the position was never published, that it was a de facto promotion prohibited by the electoral ban, and that she had to first satisfactorily complete a probationary period of three months before the position could be adjudicated to her. (Id., Ex. 32.) Rosario also notified Alverio that her reassignment did not correspond to her last position in the career service. Therefore, pursuant to PREPA's regulations, particularly Article 11.4.1, and to guarantee that all personnel transactions complied with the merit principle, Rosario informed Alverio that

she would be reinstated to the position of Occupation Analyst III and that her salary would be adjusted accordingly. Defendants posit that it is clear that Rosario's only motivation in reassigning Alverio was to assure the effective implementation of PREPA's policies and not her political affiliation. They argue that Alverio never told any of the defendants directly that she was an NPP activist, (see id., Ex. 33), and that she failed to claim that she suffered a diminution in her duties because of her political affiliation.

To the contrary, plaintiff argues that a politically discriminatory motive existed behind the relevant personnel action. Alverio claims that defendants were aware of her affiliation to the NPP because she has worked at PREPA for twenty three years and the defendants have also worked there for a long time. Through the relationship that has evolved over all those years, including conversations to that effect, plaintiffs and defendants have mutually gotten to know each other's political affiliation. She claims she actively participates in NPP concentrations, caravans, party meetings, and has also volunteered as an electoral college functionary for the NPP. She further avers that she has been deprived of functions upon her reinstatement to the position of Personnel Transactions Supervisor and later demotion to her current position as Occupation Analyst III. According to Alverio, the functions that have been taken away from her have been given to Ydsa Alvarez who is a member of the PDP. In fact, plaintiff filed an administrative claim contending that defendants committed a number of irregularities in conducting her evaluation process and won the case. Plaintiff insists that her demotion to an inferior position was in violation of the applicable Personnel Regulations.(See Docket No. 164, Ex. A at pp. 37, lines 13-25; 40, lines 10-20.)

Having carefully reviewed the record, defendants have successfully shown that Alverio's reassignment was not motivated by political discrimination. What is more, plaintiff fails to proffer evidence that shows that she suffered a diminution in her duties to the extent that it would compromise her political beliefs. Thus, the Court grants summary judgment as to plaintiff Alverio.

E. Plaintiff Rosa Edmee Jimenez Serpa ("Jimenez")

Sometime before December 1994, Jimenez was appointed, on a temporary

substitution, to the position of Supervisor of the Classification and Retribution Section. (SUMF, Docket No. 96, Ex. 34.) In December 1994, she was appointed Occupation Analyst III and her temporary substitution as Supervisory of the Classification and Retribution Section concluded. (Id.) On June 4, 1995, Jimenez was selected to occupy the position in the trust/confidence service of Executive Assistant to the General Administrator of the Personnel Office. Jimenez occupied various positions within the confidence/trust service the last one being General Administrator of the Personnel Office, to which she was appointed on August 20, 2000. On December 12, 2000, Cordero reinstated Jimenez to the position of Supervisor of the Classification and Retribution Department but in a grade much higher than her last position in the career service. The difference in grade entailed a much higher salary. (Id., Ex. 36 & 37.)

When evaluating all the personnel transactions that took place during the electoral ban, defendants discovered that Jimenez had been reinstated to a position graded much higher than the one that she was supposed to have been reinstated. Ergo, Rosario informed Jimenez that in accordance with Article 11.4.1 of the Personnel Regulations, he was reassigning her to a position graded like her last career position. Jimenez' salary was adjusted accordingly. (Id., Ex. 38 & 39.) Defendants argue that their motivation in reassigning Jimenez was the desire to effectively implement PREPA's policies and not because of her political affiliation. Furthermore, they argue that Jimenez failed to claim she suffered a diminution in her duties because of her political affiliation.

Jimenez argues that defendants know that she is a longtime affiliate to the NPP, that she has volunteered as an electoral college functionary for the NPP, and has participated in NPP fund raising activities. (See Jimenez' Deposition, Docket No. 163, Ex. B at pp. 41-44.) Furthermore, she claims that when she was reinstated on December 12, 2000 to a career position, the two positions of Supervisor of the Service, Classification and Retribution Section were already filled with other persons. Lastly, she argues that defendants fail to show that the circumstances contemplated by Article 11.4.4 of the Personnel Regulations were not present in her situation.

Having carefully reviewed the record, the Court finds that plaintiff

fails to show that she suffered a diminution in her duties. Furthermore, in regards to the reduction in salary, plaintiff fails to proffer evidence that shows that her political affiliation was a substantial factor in defendants' decision. Jimenez is merely juxtaposing a protected characteristic, defendants's political affiliation, with the fact that the she was reassigned. This is insufficient to state a constitutional claim. <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 58 (1st Cir.1990); <u>see</u> <u>Mercado-Alicea v. P.R. Tourism Co.</u>, 396 F.3d 46, 52 (1st Cir. 2005). Indeed, the evidence falls short of showing that Jimenez was treated "unfairly." Therefore, the Court grants summary judgment.

### F. <u>Plaintiff Jose A. Guilloty Arvelo ("Guilloty")</u>

On December 19, 2000, Cordero reinstated plaintiff Guilloty to the career service as Conservation of Electrical Distribution Supervisor. (SUMF, Docket No. 96, Ex. 40.) At the time he was working in Mayaguez. (<u>See</u> Plaintiff Guilloty's Deposition, Docket No. 164, Ex. B at pp. 14, lines 4-9.) Because of the urgency of a Supervisor of Electrical Distribution Conservation at the San German Technical District, plaintiff voluntarily agreed to be transferred to the San German District Technical Section as Supervisor of Electric Lines Conservation. (Stipulation subscribed by Guilloty and PREPA on November 29, 2001, <u>Id.</u>, Ex. 41.)

Guilloty claims that after he was reinstated to the position of Supervisor of Electric Lines Conservation, he has been the target of harassment by defendant Kenney Vega ("Vega"). Guilloty claims Vega transferred him to the San German Technical Section and took his beeper and radio communicator as part of the pattern of political harassment against him. Guilloty argues that following Vega's instructions, plaintiff's immediate supervisor, Engineer Hector Loperena, took plaintiff's assigned beeper and car radio. (<u>Id.</u>, at pp. 11-12.) Guilloty also claims that Loperena told him that he could not interact or supervise the personnel in his work area. (<u>Id.</u>) He claims that he was left without functions for a period of two to three months after the new administration took over PREPA. (<u>Id.</u>, at p. 28.) Guilloty alleges that to avert the situation to which he was being subjected in Mayaguez, plaintiff agreed to be transferred to the San German Area and as part of the deal he had to drop a job related complaint which he had

filed.(Id., at p. 14.)

Defendants insist that Guilloty's claims are unfounded inasmuch he cannot tell whether the defendants in this case know who he is. (Id., Ex. 43.) Furthermore, they argue he has failed to alleged that he suffered a diminution in his duties because of his political affiliation.

Guilloty testified that he is a longtime affiliate to the NPP and that his affiliation is well-known. He stated that he was a candidate to the Mayaguez Municipal Assembly for the NPP in the 1976 elections, he was both Ward President and Electoral Commissioner for the NPP, he has worked as an electoral college functionary for the NPP as well as an administrative coordinator for that party, and at one point, presided a Group in Favor of State 51. (See Guilloty's Deposition, Docket No. 164 at pp. 8-9, lines 6-24 & 4-13, respectively; see also id., at p. 10, lines 2-6.) Plaintiff attests that defendant Vega is a member of the PDP because they worked together for fifteen years and because Vega presided PREPA's PDP Group in the Mayaguez area. (Id., at p. 15, lines 4-20.) Furthermore, he testified that he knows that defendant Blanes is a PDP affiliate, among other things, because she presided PREPA's PPD Group.(Id., at p. 16, lines 12-16.)

The gist of Guilloty's claim is that Vega deprived him of his duties while he worked in Mayaguez so much so that he had to agree to move to the San German area. The fact that plaintiff eventually agreed to the transfer does not mean that he was not harassed or persecuted because of his political views. After carefully reviewing the record, the Court finds that an issue of fact remains as to whether Guilloty was deprived of his duties to the point where he felt compelled to agree to the transfer. Therefore, the Court denies summary judgment as to him.

G. Plaintiff Faustino Mercado Vega ("Mercado")

Mercado alleges that ever since he was reinstated to the position of Supervisor Engineer II, Distribution Systems, he has been the subject of constant harassment and persecution by defendants on account of his political affiliation. He further avers that although his job description calls for him to substitute his supervisor whenever he is absent, he has been by-passed by other persons when such situation occurs. Mercado testified that he knows that defendants are aware of his political affiliation because he has held trust

positions since 1973 and in some of those positions he substituted people affiliate to the PDP who knew him. Specifically, he claims that his supervisor, Mr. Juan Arroyo, knows his political affiliation and told him "you know why I cannot move you from here, because you are from another party." (Mercado's Deposition, Docket No. 164, Ex. B at pp. 19-21, lines 23-24, 28-24 and 1-7, respectively; see also SUMF, Docket No. 96, Ex. 44 at 53, lines 8-17.) Plaintiff states he has always talked openly about his political affiliation, has never denied it, has participated in NPP activities, carried out fund raising activities for the NPP, and performed registrations for NPP members. (Id., at p. 21, lines 14-20; p. 22, lines 11-16; p. 23, lines 2-4 and lines 10-13.) Lastly, he claims he suffered a diminution in duties when reported himself to the Monacillo Office by mid-February of 2001. At that office, he claims he briefly provided training. Then, he was assigned to work with an fiber optic project for a year. After that year, Mercado's work consisted of cleaning jobs("the washing programs"). He claims he was not invited to attend staff meetings because of his political affiliation. (Id., at p. 24, lines 12-24; p. 25, lines 1-11 and lines 16-24; p. 26, lines 1-22; see also SUMF, Docket No. 96, Ex. 44 at 53, lines 5-6.)

Defendants move for summary judgment arguing that Mercado has failed to effectively claim that he has suffered a diminution in his duties and that it was motivated by discrimination based on his political views. The only evidence proffered by both parties consists of excerpts of plaintiff's deposition. Having carefully reviewed the record, the Court finds that it lacks clear and convincing evidence that would lead the Court to conclude that Mercado's new position is "unreasonably inferior to the norm." Rodriguez-Pinto, 982 F.2d at 39. What is more, Mercado fails to show that the alleged "inferiority" was of a magnitude that would reasonably have caused him to compromise his political beliefs. Bisbal-Ramos, 467 F.3d at 22. Indeed, the Court cannot, based on the record, find that Mercado has shown by a preponderance of the evidence that his political affiliation was a substantial factor in causing the environment to become inferior. There being no issue of fact precluding summary judgment, the Court grants defendants' motion as to Mercado.

### H. Plaintiff Marianela Rivera Medina ("Rivera")

On September 6, 2000, Rivera started working at PREPA as a Confidential Secretary I in the trust/confidence service. (SUMF, Docket No. 96, Ex. 45.) Defendant claims that Rivera never held a position in the career service at PREPA. At the time of her employment at PREPA, Rivera was explained that her appointment in the trust/confidence service as Confidential Secretary I was of free selection and removal. (Id., Ex. 46.) On May 10, 2001, Rivera was terminated from her trust position and was advised that she had no right to a reinstatement according to the applicable law. (Id., Ex. 47.)

Plaintiff claims that her appointment at PREPA within the trust/confidence service was terminated by defendants solely because of her political affiliation. Furthermore, that although her position was within the trust/confidence service, it did not entail the formulation or implementation of public policy, neither did it place her in a position to be privy to confidential information. Rivera claims her political affiliation is known by defendants inasmuch as she has worked in electoral colleges together with other PREPA's workers during the 1996 and 2000 elections, she wore stickers allusive to the NPP, visited the NPP's campaign closings, and participated in political caravans. (Rivera's Deposition, Docket No. 164, Ex. B at p. 31, lines 15-17; p. 32, lines 6-9; p. 33, lines 2-12.) Rivera further alleges that she obtained her job at PREPA with the help of two elected NPP officials. (Id., at pp. 34-35, lines 9-24, and 1-12, respectively.)

Defendants argue that Rivera's position entails the implementation of public policy. They claim that as a Confidential Secretary I, she was working directly with Mr. Javier Velez Montijo, the Administrator of Regional Commercial Operations for the Arecibo Region. (SUMF, Docket No. 96, Ex. 45.) Rivera responded direct to Mr. Velez Montijo and was therefore in direct contact at all times with confidential information. Defendants posit that the Confidential Secretary I job description evinces the fact that as part of her duties she managed confidential information. Defendants further argue that when all reinstatements where evaluated in accordance with Article 11.4.1 of the Personnel Regulations, because Rivera had never held a career position, she could not be reinstated. If she had held a position withing the trust/confidence service for more that two years, she could have been

Civ. No. 01-2722 (PG)                                              Page 19

appointed to a regular/conditional position, pursuant to Article 11.4.1.8 of the Personnel Regulations. (See Docket No. 96, Regulations, Ex. 1.) This was not the case inasmuch as she had occupied the position for only five (5) months. Defendants insist her termination had nothing to do with her political affiliations.

The Court first determine whether Rivera's position fits the so called "Elrod/Branti" exception[6]. See Branti v. Finkel, 445 U.S. 507, 516-17 (1980); Elrod v. Burns, 427 U.S. 347(1976). "[D[etermining whether a position is "confidential" or "policymaking" is not a matter of inserting variables into a known equation and crunching the numbers." Galloza v. Foy, 389 F.3d 26, 29 (1st Cir. 2004); see Elrod, 427 U.S. at 367. "[T]the determination as to whether a particular office is policymaking or confidential in nature, so as to make political affiliation an appropriate requirement for holding it, is fact-specific." Galloza, 389 F.3d at 29. The First Circuit has established a two-step analysis designed to aid the court in determining whether political affiliation is an "appropriate requirement for the effective performance of the public office involved." Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241 (1st Cir.1986). First, the Court must determine "whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests ... [or] concerns." Id. (quoting Branti, 445 U.S. at 519.) Second, the court must determine whether "the particular job resembles that of a policymaker, a communicator, or a privy to confidential information." Id. at 242.

The Court first determined "whether the agency employing the plaintiff handle[s] matters potentially subject to partisan political differences, and

---

[6] As a general rule, the First Amendment protects public employees from adverse job decisions based solely on their political affiliation and beliefs. See Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668, 675 (1996); Rutan v. Repub. Party, 497 U.S. 62, 75 (1990); Branti v. Finkel, 445 U.S. 507, 516-17 (1980); Elrod v. Burns, 427 U.S. 347(1976); Gomez v. Rivera Rodriguez, 344 F.3d 103, 109-110 (1st Cir. 2003). "Like most general rules, this rule admits [sic] certain well-defined exceptions." Galloza v. Foy, 389 F.3d 26, 28-34 (1st Cir. 2004). "One such exception is reserved for instances in which political affiliation is an 'appropriate requirement for the effective performance of the public office involved'." Id., at 28 (quoting Branti, 445 U.S. at 518). Accordingly, when faced with a political discrimination claim, the Court must determine: first, whether plaintiff's position enjoys protection against political patronage, and if not, whether the plaintiff suffered and adverse employment action for political reasons. See Branti, 445 U.S. at 517-20.

should permit a tentative conclusion about the extent to which the particular position has the capacity to influence the resolution of such matters." Galloza, 389 F.3d at 29 (quoting Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1258 (1st Cir. 1987)(internal quotation marks omitted). This test is met. PREPA is involved in decision making processes that revolve around politically sensitive issues. See Rodriguez-Burgos v. Electric Energy Authority, 853 F.2d 31, 35 (1st Cir. 1988)(holding that PREPA "exercises broad powers in the implementation of the island's economic development policies, [which] in turn, is one of the most pressing political issues on the island.")

The second prong of the test requires a "detailed examination into whether the specific responsibilities of the position sufficiently resemble those of a policymaker or office-holder whose functions are such that party affiliation is an appropriate criterion for tenure." Galloza, 389 F.3d at 29(citations omitted). The Court must examine "a wide array of factors, including the relative compensation level for the position, the technical expertise (if any) required to do the job, the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, the influence of the position over programs and policy initiatives, and the public perception of what the position entails." Galloza, 389 F.3d at 29-30. "This inquiry focuses not on what functions a particular occupant of the position may in fact carry out from time to time, but, rather, on the essential attributes of the position itself. Galloza, 389 F.3d at 30. Therefore,"if a formal job description exists, it is important for an inquiring court to look to the specifics of that document." Id., see Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 62 (1st Cir. 1997); Ortiz Piñero v. Rivera Arroyo, 84 F. 3d 7, 13 (1st Cir. 1996).

Having carefully reviewed the Job Description for Confidential Secretary I (Docket No. 164, Ex. B at pp.44-46), the Court finds that Rivera's position does not resemble that of a policymaker, a communicator, or a privy to confidential information. The fact that she was working directly with the Administrator of Regional Commercial Operations does not mean that her position meets the Elrod/Branti exception. The lack of: power to control others, speak in the name of policymakers, and influence programs, as well as

the technical competence required for the position support the Court's conclusion. Indeed, a cursory reading of the Job Description suffices to show that Rivera's position is not a "confidential" or "policymaking" position.

Nevertheless, the Court grants summary judgment because, as defendants claim, Rivera could not be reinstated given that she never held a career position prior to her tenure in the trust/confidence service. Pursuant to the Personnel Regulations, and given her short time at PREPA, she had no right to be reinstated. The fact that her position does not fit the Elrod/Branti exception does not alter the fact that she had no right to a reinstatement. The Court thus grants summary judgment because defendants have successfully proffered a non-discriminatory reason for Rivera's termination.

I. <u>Maria de Lourdes Ramos Rivera ("Ramos-Rivera")</u>

Plaintiff Ramos-Rivera held a career position as Confidential Secretary I in the Construction and Improvements Area at the Monacillos Office. (Ramos' Deposition, Docket No. 164, Ex. B at pp. 34 & 35, lines 9-24, & 1-12, respectively.) On April 25, 1993, Ramos-Rivera was selected to occupy a position in the trust/confidence service as Executive Assistant to the Engineering Director. (SUMF, Docket No. 96, Ex. 48.) Thereafter, on December 3, 1995, Ramos-Rivera's position in the trust/confidence services was re-evaluated and re-classified. Ramos-Rivera was then appointed Executive Assistant to the Director of Technical Operations, Transmission and Distribution. (<u>Id.</u>, Ex. 49.) In the 1996 elections, Ramos-Rivera was elected to office, therefore, on March 24, 1996, she requested a voluntary separation from her trust/confidence position at PREPA. (<u>Id.</u>, Ex. 50.) Ramos-Rivera again ran for office during the 2000 elections but was not elected. She then requested Cordero to reinstate her to her last position in the career service at PREPA. (<u>Id.</u>, Ex. 51.) Cordero reinstated Ramos-Rivera to the position of Office Supervisor II in the career service even though her last career service position was Confidential Secretary I. (<u>Id.</u>, Ex. Nos. 50 & 52.) On January 17, 2002, Rosario sent a letter to Ramos-Rivera informing her that her reinstatement was illegal because her last career service position was Confidential Secretary I. (<u>Id.</u>, Ex. 53.) Effective February 3, 2002, Ramos-Rivera was reassigned to the position of Confidential Secretary I in the Construction and Improvements office in Monacillos and her salary was

Civ. No. 01-2722 (PG)                                                    Page 22

adjusted. Defendants argue that they did not demote plaintiff because of her political affiliation, but solely to effectively implement PREPA's policies and regulations. Defendants further claim that plaintiff failed to claim that she suffered a diminution of her duties.

Having carefully reviewed the record, the Court finds there is an issue of fact regarding plaintiff's allegation of diminution of duties which precludes granting summary judgment. In her deposition she testified that for a year she was not assigned any work and simply sat all day in her desk without anything to do. (Ramos-Rivera's Deposition, Docket No. 164, Ex. B at p. 41, lines 2-21.) Although her reinstatement by Cordero violated the electoral ban and her subsequent reassignment to Confidential Secretary I was not motivated by political reasons, defendants fail to proffer evidence to show that she did not suffer a diminution of duties and that it was not of a magnitude that would compromise her political views.

<u>**CONCLUSION**</u>

WHEREFORE, for the preceding reasons, the **Court DENIES IN PART AND GRANTS IN PART** defendants' Motion for Summary Judgment on Plaintiffs' Individual Claims **(Docket No. 96.)** The motion is **GRANTED** as to Magaly Alverio Fernandez, Rosa Edmee Jimenez Serpa, Faustino Mercado Vega, and Marianela Rivera Medina. The motion is **DENIED** as to Raquel Ramos Padilla, Sandra I. Nieves De Jesus, Yelitza Garcia Colon, Jose A. Guilloty Arvelo, and Maria de Lourdes Ramos Rivera.

**SO ORDERED**.

In San Juan, Puerto Rico, August 6, 2007.

S/JUAN M. PEREZ-GIMENEZ
U. S. DISTRICT JUDGE